IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROBERT LEROY SMITH,

       Petitioner,

v.                                  CASE NO. 1:10-cv-94-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Petitioner's *pro se* Second Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 19.) The Respondent filed a response and an appendix with relevant portions of the state-court record. (Doc. 20.) Petitioner filed a reply. (Doc. 23.) Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State Court Proceedings

Petitioner was charged in 2002 for 1) robbery with a firearm, 2) aggravated robbery with a firearm, 3) burglary of a vehicle armed with a firearm, 4) grand theft of a motor vehicle, and 5) felony habitual traffic offender. (Resp. Ex. A-1, at 74-76.) The charges stemmed from an incident late at night at a Gainesville nightclub, in which Petitioner robbed Robert Perkins of $500 at gunpoint and hit him in the face with the

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

gun.  The robbery occurred when Petitioner was sitting in his truck in the parking lot of the club, waiting for his friend Brian Watson, who was inside the club.  Petitioner entered the truck via the passenger door and beat Mr. Perkins with the gun before taking the money and forcing Mr. Perkins to exit the truck.  Petitioner forced Mr. Perkins to pull down his pants and underwear, and rifled through both searching for money.  At this point Mr. Watson arrived on the scene with several other individuals, and tried to intervene in the robbery by telling Petitioner to stop.  Mr. Watson recognized Petitioner "from the neighborhood" as an individual known as Roy.  (Petitioner's full name is Robert Leroy Smith.)  Petitioner fled the scene in a blue Jaguar with dealer tags, a vehicle that did not belong to him.  Mr. Perkins and Mr. Watson reported the incident to nearby police, who produced a photo lineup of potential suspects for the victims based on the name "Roy" and the victims' descriptions.  Both victims picked Petitioner out of the photo lineup.  The Jaguar was eventually located in the back of the home of Petitioner's girlfriend, where he was arrested.

No defense witnesses were presented at the first trial. Petitioner had attempted to have two alibi witnesses testify, but the witnesses appeared to be evading service of a subpoena and were never produced.  The jury convicted Petitioner of the charges against him, and Petitioner was sentenced to life imprisonment on counts I and III, with concurrent terms of 30 years on counts II and IV and 5 years on count V.  (Resp. Ex. A-1, at 113-14, 117-27.)  On appeal, the First District Court of Appeal ("First DCA") reversed.  *Smith v. State*, 873 So.2d 1289 (Fla. 1st DCA 2004).  The court held that the trial court had erred in denying Petitioner's motion for a continuance to secure two alibi witnesses.

On remand, Petitioner was tried before a jury, charged with 1) robbery with a firearm, 2) aggravated battery with a firearm, and 3) burglary with assault and firearm use. (Resp. Ex. N, at 280-82.) At the second trial, Petitioner testified in his own defense. Petitioner claimed that the identification of him by the witnesses was a mistake, because he was in Tallahassee on the night in question. With respect to the Jaguar, Petitioner did not deny having been in the vehicle – indeed, his fingerprints were found inside. But the owner of the vehicle had admitted that he had loaned the vehicle to a "young lady" of his acquaintance, on the promise that the young lady would bring him drugs. The lady never returned with the vehicle nor the drugs. Petitioner asserted that several individuals had accessed the vehicle as drivers or passengers in the weeks prior to the robbery, including himself. He stated that he had attended a concert as a passenger in the Jaguar, and that is how his fingerprints came to be in the vehicle. The defense also presented an alibi witness, albeit not one of the two "missing" alibi witnesses from the first trial. Petitioner was convicted on all charges and sentenced to life imprisonment on counts I and III, and to 15 years' concurrent imprisonment on count II. (Resp. Ex. N, at 361-69.) Petitioner appealed his conviction. (Resp. Ex. R, S, T.) The First DCA affirmed *per curiam* without opinion. (Resp. Ex. U; *Smith v. State*, 930 So. 2d 626 (Fla. 1st DCA 2006)). Petitioner did not appeal further.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 on December 26, 2006. (Resp. Ex. V.) The trial court summarily denied 19 of the 20 claims, and appointed counsel for an evidentiary hearing on the first claim. (Resp. Ex. V, at 55-74.) Prior to the evidentiary hearing, Petitioner attempted to bring an interlocutory appeal of the trial court's denial of his other claims, but the appeal was

dismissed on March 7, 2008.  (Resp. Ex. X, AA.)  At the evidentiary hearing on March

26, 2008, the trial court permitted Petitioner to raise a twenty-first claim as well.  The

postconviction court denied Plaintiff's postconviction motion on June 17, 2008.  (Resp.

Ex. CC, at 264-68.)  The First DCA affirmed without opinion, and the mandate issued on

February 9, 2010.  (Resp. Ex. HH, II; *Smith v. State*, 25 So. 3d 1229 (Fla. 1st DCA

2010)).

     The instant Petition followed.  (Doc. 19.)  In his Second Amended Petition,

Petitioner asserts 18 claims for relief: 16 claims of ineffective assistance of counsel, and

2 claims that the trial court erred in denying Petitioner's motion to suppress and in

permitting testimony of Petitioner's ex-girlfriend.

## Section 2254 Standard of Review

     Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and

convincing evidence that the state court's factual determination was "objectively

unreasonable" to rebut the presumption that the determination was correct. *Gill v.

Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

     As to legal findings, a petitioner is entitled to federal habeas relief only if the state

court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"
refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower
federal courts may be considered to the extent that they demonstrate how those courts
applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.
2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions
for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions
demonstrate that the Supreme Court's pre-existing, clearly established law compelled
the circuit courts (and by implication would compel a state court) to decide in a definite
way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§
2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases
"[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have
independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*
535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal
habeas court may grant the writ if the state court arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the state court decides a case
differently than this Court has on a set of materially indistinguishable facts. Under the
'unreasonable application' clause, a federal habeas court may grant the writ if the state
court identifies the correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529
U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require
citation of our cases-indeed, it does not even require *awareness* of our cases, so long as
neither the reasoning nor the result of the state-court decision contradicts them." *Early v.*

*Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the

reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

Because Petitioner's claims allege ineffective assistance of counsel, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy,

[the Court] need not attempt to divine the lawyer's mental processes underlying the

strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to provide

effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other
> reasonable courses of defense (that the lawyer did not think of at all)
> existed and that the lawyer's pursuit of course A was not a deliberate
> choice between course A, course B, and so on. The lawyer's strategy was
> course A. And [the Court's] inquiry is limited to whether this strategy, that
> is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the

proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694. A "reasonable probability is defined

as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is

a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was

committed, but whether the state court decision is contrary to or an unreasonable

application of federal law that has been clearly established by decisions of the Supreme

Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not

enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal

law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785

(quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### *Claim 1: Failure to Call Alibi Witnesses*

Petitioner contends that his counsel rendered ineffective assistance by failing to

"investigate, and depose and call" two alibi witnesses, Tameka Reed and Shantel Johnson. (Doc. 19, at 4.) Petitioner claims that Ms. Reed would have testified that she and Petitioner were in Tallahassee, assisting friends with a car problem. Petitioner states that his counsel was aware of the location of Ms. Reed and that counsel's investigator attempted to contact her.

With respect to Ms. Johnson, Petitioner claims that Ms. Johnson would have testified that Petitioner told her that he was going to Tallahassee during the time in question, and that her caller ID reflected calls from a Tallahassee number from Defendant.[2] Petitioner claims that his counsel was aware that Ms. Johnson was available to testify and that counsel was ineffective for failing to call these witnesses.

By way of background, at Petitioner's first trial in 2002, no defense witnesses were called. Shantel Johnson, Defendant's ex-girlfriend, testified at the first trial as a Government witness. Contrary to Petitioner's allegations in Claim One, Ms. Johnson was deposed prior to the trial. (Resp. Ex. EE.) At the second trial, the defense called Takila Rowe as an alibi witness.[3] Neither Ms. Reed nor Ms. Johnson testified at the second trial.

This "alibi witness" claim was also the first claim in Petitioner's postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850. The trial court granted an evidentiary hearing on this claim, then denied the claim on the merits. At the evidentiary

---

[2] Shantel Johnson testified at Petitioner's first trial as a Government witness.

[3] As the state postconviction court observed, Ms. Rowe was not a particularly compelling alibi witness. "Her testimony did not completely support Defendant's alibi as she was unsure of the exact dates that they were in Tallahassee." (Resp. Ex. BB, at 100; *See* Resp. Ex. P, at 266-67.)

hearing, Petitioner was appointed postconviction counsel and Petitioner's trial counsel

and Ms. Johnson testified.  The trial court stated that:

> [trial counsel] testified at the evidentiary hearing that, in response to
> Defendant's request with respect to certain alibi witnesses, he retained a
> court-appointed investigator who was able to locate only one potential
> witness, Takila Rowe, who he called at trial.  (It is noted that no defense
> witnesses were called at the initial trial in 2002.  He testified that he
> reviewed the deposition and the testimony of Shantel Johnson, who
> testified at the 2002 trial as a *State's* witness.  He further testified that
> based upon her trial testimony, he decided not to call her because she
> "couldn't help."  A review of the 2002 trial transcript confirms his
> testimony.

> In the 2002 trial, Shantel Johnson testified that the Defendant
> appeared in her home uninvited and unannounced in the early morning
> hours of February 23rd.  He was looking out a window.  The police were
> there and arrested Defendant.  On cross-examination, she testified that
> she had not seen the Defendant for a couple of days prior to the day of
> his arrest, and that her caller ID had several calls from an unknown
> number in Tallahassee.  She didn't testify as to the day or date of the
> calls.  Her only knowledge regarding Defendant's presence in Tallahassee
> was inadmissible hearsay.  Trial transcript, 23 August 2002, page 145,
> lines 2-17. [Trial counsel's] decision not to call Shantel Johnson (who the
> state had not called in the 2005 trial but had given testimony adverse to
> the Defendant in the 2002 trial) was reasonable under the norms of
> professional conduct.

(Resp. Ex. CC, at 266-67.)

"Complaints concerning uncalled witnesses impose a heavy showing since the

presentation of testimonial evidence is a matter of trial strategy and often allegations of

what a witness would have testified to are largely speculative."  *United States v. Guerra*,

628 F.2d 410, 413 (5th Cir. 1980).  In this case, Petitioner's trial counsel testified that he

employed an investigator to locate alibi witnesses, and that investigator "made

numerous attempts" to locate individuals identified by Petitioner as potential witnesses.

(Resp. Ex. DD, at 9.)  Petitioner has presented only speculation in support of his

argument that his trial counsel failed to investigate potential alibi witnesses. Counsel

testified that his investigator was able to locate only one alibi witness, Takila Rowe, and

that he did call that witness at trial. He also testified that his investigator was able to

confirm where Tameka Reed was living, but that he was unable to serve her with a

subpoena. *Id.* Counsel testified that he would never call a trial witness or subpoena a

trial witness without being certain what they would say. *Id.* at 9-10.

     In this case, Petitioner's counsel testified to his and his investigator's efforts to

locate Ms. Reed, and their lack of success in being able to confirm her testimony or

serve her with a subpoena. Petitioner's assertions regarding what Ms. Reed would have

testified to are wholly speculative. Such speculative assertions are insufficient to

overcome the deference afforded to counsel's strategic decisions regarding what

evidence to present.

     With respect to Ms. Johnson, Petitioner has similarly failed to show that his trial

counsel's performance was deficient. Ms. Johnson was a Government witness in the

first trial, and there was no evidence from her 2002 testimony or her deposition that her

testimony would have been helpful to Petitioner. At the postconviction hearing, Ms.

Johnson testified that her "memory is not good at all," and that "[a]ll I know is something

about a robbery and he called me from Tallahassee and he supposedly wasn't here

when it happened, and that's all I remember." (Resp. Ex. DD, at 38.) Ms. Johnson

further stated that she had no idea what she would have testified to if she had been

called as a witness in Petitioner's second trial. *Id.* at 39. The state court's finding – that

under these circumstances, Petitioner's trial counsel's decision to not call Ms. Johnson

as a witness was a reasonable professional decision – was not an unreasonable

application of *Strickland*.

On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to relief on this claim.

### Claim 2: Failure to Call Prospective Witnesses Det. Coleman and Joetta Johnson

Petitioner claims that his trial counsel was ineffective for failing to call two prospective defense witnesses who would have corroborated his version of events: Detective Allen Coleman and Ms. Joetta Johnson. Petitioner claims that Det. Coleman would have testified that he did not tell Detective Joe Senn to put Petitioner's photo in the photo lineup, and that he had "known the Defendant since he was a kid, and the only thing the defendant got into was selling drugs and stealing cars." (Doc. 19, at 6.) Petitioner provides no details as to what Ms. Johnson may have testified to at trial.

Det. Senn was the police detective who put together the photo lineup that included Petitioner's photo. Prior to the trial, Petitioner's counsel moved to suppress the lineup as unduly suggestive, because the robbery victim had told police that the perpetrator was wearing a blue and white striped shirt. In the lineup, Petitioner's photo was the only one of an individual in a blue and white striped shirt. The trial court denied the motion to suppress. Det. Senn testified at trial that he put together the photo lineup after hearing that one of the victims, Brian Watson, identified the perpetrator as a person he knew who went by "Roy." (Resp. Ex. P, at 667.) He further testified that he was not aware that victim Robert Perkins had identified the perpetrator as wearing a blue and white striped shirt. *Id.* at 682. Det. Senn did not testify that Det. Coleman told him to place Petitioner's photo in the lineup.

The state postconviction court denied Petitioner's claim on the merits:

> Defendant claims that Detective Coleman would have testified that he did not tell Detective Senn to put Defendant's photo in the line-up that was shown to the victims. At trial, there was no testimony from Detective Senn which indicated that he placed Defendant's picture in the lineup based on Detective Coleman's advice. *See* Trial Transcript at 231 (lines 15-25) - 253 (lines 1-25). Detective Coleman could not have been used to refute testimony that was not given. Thus, Defendant fails to show how he was prejudiced by the failure of counsel to call Detective Coleman.

(Resp. Ex. BB, at 101-02.) The state court's rationale was not an unreasonable application of *Strickland*. There was no reason for trial counsel to call Det. Coleman to state that he did not tell Det. Senn to include Petitioner's photo in the lineup, when Det. Senn never mentioned Det. Coleman in his testimony. Further, Petitioner's assertion that Det. Coleman would have testified that he was "merely" a drug seller and car thief is both purely speculative and not favorable to him. On this record, Petitioner cannot show that trial counsel's performance was deficient. Nor can he show that he was prejudiced as a result of the purported failure.

With respect to Ms. Johnson's testimony, Petitioner fails to even speculate as to her proposed testimony in his § 2254 motion. In his 3.850 motion, however, Petitioner claimed that Ms. Johnson would have provided some explanation of how the blue Jaguar came to be on the scene of the crime. The state postconviction court also denied this claim on the merits:

> Defendant alleges that Joetta Johnson would have testified that Defendant was loaning out the get-away vehicle (a Jaguar) to "different black males" around the time of the charged offenses. The record reflects an order to transport was entered by the court to bring Ms. Johnson from the Department of Corrections to Alachua County for the purpose of testifying at Defendant's trial. *See* Order to Transport. In his motion, Defendant states that counsel told him, one day before trial, that Ms.

> Johnson was actually unwilling to testify on his behalf; but, according to Defendant, Ms. Johnson was actually willing to testify. In support of this claim, Defendant attaches an *undated* and *unsworn* letter, allegedly from Ms. Johnson, to his motion. The record reflects that there was testimony at trial indicating that Defendant was with other black males when he committed the instant offense. *See* Trial Transcript at 75 (lines 14-25), 91 (lines 13-25) - 92 (line 1). Thus, the fact that there were other people associated with the get-away vehicle is undisputed. Furthermore, Ms. Johnson's proposed testimony neither supports Defendant's alibi nor refutes the testimony of any State's witness at trial. Defendant fails to show how he was prejudiced by the failure of Ms. Johnson to testify. This claim is without merit.

(Resp. Ex. BB, at 102.) Petitioner has pointed to nothing in the record that demonstrates the state postconviction court's reasoning was incorrect. There was no reason for trial counsel to call Ms. Johnson as a witness, and Petitioner's assertion that the outcome of his trial would have been different had she testified is pure speculation. On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*.

### Claim 3: Failure to Investigate and Depose State Witnesses

Petitioner contends that trial counsel rendered ineffective assistance by failing to "depose and interview state witnesses Robert Perkins and Brian Watson," the victims in this case. (Doc. 19, at 8.) Petitioner asserts that his trial counsel should have impeached these witnesses with prior inconsistent statements that apparently should have been obtained through depositions.

> The state postconviction court denied this claim on the merits:
> Both witnesses were deposed before trial, which is reflected in the defense counsel's use of their depositions for impeachment at trial. *See* Trial Transcript at 86 (lines 3-25), 95 (line 25)- 97 (lines 1-23), 99 (lines 9-13), 127 (lines 24-25) - 129 (lines 1-22), 131 (lines 24-25)- 140 (lines 1-11). Defendants's claim that counsel was unprepared for trial is conclusory.

(Resp. Ex. BB, at 103.)  The state postconviction court went on to discuss a specific

instance of impeachment that Petitioner did not raise on federal habeas.  As the state

court pointed out, Mr. Perkins and Mr. Watson were both deposed prior to the trial, and

defense counsel used their prior statements to impeach them.  For example, trial

counsel pointed out that while Mr. Perkins testified at trial that the perpetrator of the

robbery had gold teeth, he did not mention this detail in his deposition.  (Resp. Ex. O, at

86-87.)  During the testimony of Mr. Watson, trial counsel used his deposition

statements to impeach his testimony regarding whether he was intoxicated on the night

of the robbery.  (Resp. Ex. O, at 127-29.)  Petitioner has failed to demonstrate that his

counsel's performance was deficient, nor that he was prejudiced as a result of the

purported failures.  On this record, Petitioner also has failed to show that the state

court's decision reflects an unreasonable application of *Strickland*.

### Claim 4: Failure to Call Det. Coleman as a Witness

Petitioner contends that trial counsel rendered ineffective assistance by failing to

call Det. Coleman as a witness.  Petitioner asserts that his counsel should have called

Det. Coleman to refute statements made by Det. Senn in his deposition that it was Det.

Coleman who told him to put Petitioner's photo in the lineup.  The state postconviction

court correctly found that "[t]his is the same claim raised in ground (ii). . . . Detective

Coleman could not have been used to refute testimony that was not given."  (Resp. Ex.

BB, at 103-04.)   This claim fails for the same reasons stated above in the discussion of

Petitioner's Claim 2.

### Claim 5: Failure to Impeach State Witnesses Robert Perkins and Brian Watson

Petitioner contends that trial counsel rendered ineffective assistance by failing to

impeach state witnesses Robert Perkins and Brian Watson. Petitioner asserts that the witnesses made contradictory statements about where Mr. Perkins' truck was located in the bar parking lot, whether Mr. Perkins went into the bar and whether he was intoxicated, and whether it was dark at the time of the robbery.

Petitioner raised these same points in his state postconviction motion. The state court permitted Petitioner to raise only one of these points at the evidentiary hearing: whether trial counsel rendered ineffective assistance by failing to impeach Mr. Watson on the issue of whether Mr. Perkins had entered the bar and was drinking beer. The state court denied all other claims on the merits, and denied the final point on the merits following the evidentiary hearing.

Petitioner first argues that trial counsel should have impeached Mr. Perkins because Mr. Perkins stated in his deposition that the entrance to the bar was on his right when he was parked in the parking lot, but stated at trial that the entrance to the bar was on his left. What Mr. Perkins actually testified at trial was that when he was parked in the parking lot, the entrance of the club would be "where she's at," pointing at the court reporter. (Resp. Ex. O, at 63.) It is not clear from the transcript where the court reporter was located, but the state postconviction court believed that the court reporter was on Mr. Perkins' right, finding that "Perkins testified at trial that the entrance to [the bar] was to his right at the location where he parked." (Resp. Ex. BB, at 104.) The trial court found, accordingly, that Mr. Perkins deposition and trial testimony were not inconsistent. Petitioner has pointed to no details about the courtroom setup at his trial that evidence that the state court's factfinding in this case was incorrect. Giving Petitioner the benefit of the doubt, however – that the court reporter was actually to Mr.

Perkins' left and his testimony was therefore inconsistent with his deposition testimony

– Petitioner has failed to show that he was prejudiced by his counsel's failure to

impeach Mr. Perkins on this point.  As discussed above, Petitioner's counsel

impeached Mr. Perkins on other inconsistent statements that were material to his

identification of Petitioner.  There is no evidence to support the claim that if counsel had

impeached Mr. Perkins on his testimony regarding the location of his truck, the outcome

of the trial would have been different.

Petitioner's second argument is that the victims' statements regarding whether

Mr. Perkins went into the bar and whether he was drinking were inconsistent, and that

his trial counsel should have impeached them on this point. Both victims testified at trial

that Mr. Perkins did not enter the bar and was not drinking on the night of the robbery.

(Resp. Ex. O, at 63, 85, 117, 127.)  In his deposition testimony, however, Mr. Watson

stated that Mr. Perkins did enter the bar with him and was drinking. The postconviction

court permitted this claim to be raised at the evidentiary hearing because it did not have

access to Mr. Watson's deposition to compare his deposition and trial testimony.

Following the evidentiary hearing, the state court denied the claim on the merits:

> At the 2002 trial, Watson testified that the victim did not go into [the bar] with him.  Trial transcript, 23 August 2002, page 94, lines 17-24.  At his deposition taken on 6 October 2004, he testified that he and the victim both went into [the bar].  *See* Deposition, page 16, lines 21-24.  At trial on 29 September 2005, he testified that the victim did not go into [the bar]. Trial transcript [hereinafter "Transcript"], 29 September 2005, page 117, lines 5-12.

> [Trial counsel] testified at the hearing on 26 March 2008 that, after reading the transcripts of Watson's deposition and trial testimony, he decided to attack Watson's credibility by showing that he was too impaired to clearly observe the robbery after excessive drinking at two bars.  During his cross-examination, [trial counsel] attempted three times to impeach

Watson, or refresh his recollection, with prior inconsistent statements – all relating to Watson's and the victim's drinking that night. [Trial counsel] used Watson's purported poor memory to bolster his argument that the poor memory was the result of Watson's intoxication that night. Transcript, page 128, lines 12-16.

The record further reflects that [trial counsel] <u>did</u> attempt to impeach Watson with the prior inconsistent statement alleged by Defendant in ground (v). Transcript, page 133, lines 1-12. While questioning Watson about alcohol consumption, the witness volunteered that the victim didn't go into [the bar]. The State objected to [trial counsel's] attempt to impeach. Transcript, page 134, lines 1-4. The next three pages of a sidebar conversation reveal that, after much confusion, the trial judge allowed [trial counsel] to continue. Transcript, page 136, lines 18-21. At that point, it is no longer clear from the record exactly which of Watson's statements was being impeached. Compare Transcript, page 133, lines 8-12, with Transcript, pages 134-138. [Trial counsel] then abandoned the attempted impeachment.

[Trial counsel] testified that, in his experience, an attorney can "go too far" in impeaching a witness. "You have to know when to stop." Given his strategic decision to impeach Watson as too impaired by alcohol to observe the robbery, rather than attack his honesty by impeachment with a prior inconsistent statement (*see* <u>Florida Evidence</u>, § 614.1), [trial counsel's] decision to go no further in his impeachment of Watson was reasonable under the norms of professional conduct. *See* <u>Occhicone v. State</u>, 768 So. 2d 1037 (Fla. 2000). "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." [*Id.*] at 1048.

(Resp. Ex. CC, at 265-66.) The state postconviction court's decision was a reasonable application of *Strickland*. As trial counsel testified and as the trial record reflects, he attempted to impeach Mr. Watson on exactly the issue Petitioner complains of here – that Mr. Watson had made inconsistent statements regarding whether Mr. Perkins had entered the bar on the night of the robbery, and whether Mr. Perkins was drinking. After objections and sidebar discussions with the state court, counsel made the reasonable professional decision that he would not continue to attack Mr. Watson's

credibility on the prior inconsistent statement, because an aggressive ongoing attack of this sort could backfire. Instead, counsel determined that this issue "wasn't the focus of what I was looking for," and decided to focus on the more important issue of whether Mr. Watson himself was too intoxicated to make an accurate identification. (Resp. Ex. DD, at 23.) This was a reasonable professional decision, and does not constitute deficient performance. Petitioner has also failed to show that he was prejudiced as a result of his counsel's alleged deficiencies, since his counsel did impeach Mr. Watson on the more critical issue of his own impairment. (Resp. Ex. O, at 131-34.)

With respect to the third point, the lighting in the parking lot, Petitioner asserts that because the parking lot was dark, Mr. Perkins' identification of him was suspect. Mr. Perkins testified at trial that he could see Petitioner in the light of the parking lot. Petitioner asserts that Mr. Perkins' deposition testimony was contrary to his trial testimony, but points to no specific statements in Mr. Perkins deposition that would contradict his trial testimony. Even if the testimony was inconsistent, however, the state postconviction court correctly pointed out that "[w]hether or not the parking lot was dark, Perkins was able to get a good look at the perpetrator inside his truck, which was lit." (Resp. Ex. BB, at 105.) Accordingly, even if counsel's performance was deficient for failing to impeach Mr. Perkins on this point, Petitioner can show no prejudice as a result.

In sum, on this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland* and is not entitled to relief on this claim.

***Claim 6: Failure to Call Witnesses at the Motion to Suppress Hearing***

Petitioner contends that trial counsel rendered ineffective assistance by failing to call Robert Perkins, Det. Senn, and Det. Coleman at the hearing on his motion to suppress the photo identification.  Prior to the trial, Petitioner's counsel had argued that the photo identification should be suppressed because it was unduly suggestive, due to the fact that Mr. Perkins had stated that the perpetrator was wearing a blue and white striped shirt.  In the lineup, only the photograph of Petitioner included a blue and white striped shirt.  Petitioner's motion to suppress was denied, and evidence of the photo lineup identification was introduced at trial.  Petitioner now claims that if Det. Senn had testified at the motion to suppress hearing, he would have stated that he did get a synopsis of Mr. Perkins' description of the suspect prior to putting together the photo lineup for the victims.  He claims that Det. Coleman would have testified that he did not tell Det. Senn to include a photograph of Petitioner.  Finally, Petitioner claims that Mr. Perkins would have testified that the blue and white striped shirt in the photograph influenced his decision to pick Petitioner's photo out of the lineup.

The state postconviction court denied this claim on the merits.  With respect to Det. Senn, the court noted that

> Detective Senn testified that he was unaware, at the time [he put together the photo lineup], that the perpetrator was wearing a blue-and-white striped shirt during the commission of the offense.  *See* Trial Transcript at 247 (lines 13-25) - 248 (lines 1-12).  Had counsel called Detective Senn earlier at the suppression hearing earlier that day, it is unlikely that he would have testified differently.  The record reflects that defense counsel had no evidence to support the assertion that Detective Senn did have prior knowledge of the shirt color before creating the photo lineup.  *Id.* at 15 (lines 18-25) - 16 (lines 1-2).

(Resp. Ex. BB, at 106.)  Petitioner's assumption that Det. Senn would have testified that

he *did* know that the alleged perpetrator was wearing a blue and white striped shirt at the time he put together the photo lineup is entirely conclusory and without factual support in the record. Furthermore, trial counsel specifically stated that he had no information to support the claim that Det. Senn knew this detail at the time of the lineup. (Resp. Ex. O, at 16.) Petitioner has not shown that his counsel's failure to call Det. Senn as a witness was deficient performance.

With respect to the proposed testimony of Det. Coleman, the state postconviction court correctly found that "Detective Coleman's proposed testimony has no connection" to the issues raised in the motion to suppress. (Resp. Ex. BB, at 106.) This claim is largely duplicative of other claims related to Det. Coleman's proposed testimony, discussed above, and does not entitle Petitioner to habeas relief.

With respect to Mr. Perkins' proposed testimony, the state court found that Petitioner "does not allege how his testimony would have affected the outcome of the motion to suppress hearing." *Id*. Mr. Perkins testified at trial, under cross-examination, that he was sure that the photo of Petitioner with a blue and white striped shirt factored into his decision in picking that photograph. (Resp. Ex. O, at 94.) Mr. Perkins also testified that he picked the individual based on his eyes and his hair. *Id.* at 81. Assuming that Mr. Perkins' testimony at the motion to suppress hearing would have supported Petitioner's motion, Petitioner has still failed to show prejudice. As the state postconviction court observed, "Brian Watson also identified Defendant's picture. In fact, it was Watson's recognition of Defendant at the time of the offense that triggered his placement in the photo line-up. *Id.* at 11 (lines 18-24), 121 (lines 2-25) - 126 (lines

1-25), 232 (lines 14-25) - 233 (lines 1-25)."  (Resp. Ex. BB, at 106-07.)  Petitioner has

pointed to no specific facts supporting his claim that had these witnesses testified at the

motion to suppress hearing, the outcome of the hearing would have been different.

On this record, Petitioner has failed to show that the state court's decision

reflects an unreasonable application of *Strickland*, and he is not entitled to relief on this

claim.

### Claim 7: Failure to Investigate Police "Setup"

Petitioner contends that trial counsel rendered ineffective assistance by failing to

investigate, "where an investigation would have produced evidence and witnesses to

corroborate that he was set up by the alleged victim and police officers."  (Doc. 19, at

16.)  Officer Brent Traywick testified that he found a blue striped shirt in the blue

Jaguar, amongst a number of other items, and secured that evidence in a locker.

(Resp. Ex. P, at 203.)  Petitioner alleges that if a DNA test had been conducted on the

shirt, it would have proven that he was not the perpetrator of the crime.

The state postconviction court denied this claim on the merits:

> A blue-and-white striped shirt was found in the Jaguar at the location
> where Defendant was arrested.  *See* Trial Transcript at 203 (lines 1-16.)
> The record reflects that the shirt was neither placed into evidence nor was
> it discussed by the State in closing argument beyond responding to the
> defense's closing argument.  *Id*. at 314 (lines 2-25) - 317 (lines 1-11).  In
> addressing the shirt, the State argued that it was a non-issue.  *Id* at 346
> (lines 9-25) - 350 (lines 1-17).  Defendant contends that counsel should
> have determined whether the shirt fit Defendant, as well as had it DNA
> tested.  Defendant claims that had it been tested for DNA, his DNA would
> not have been on the shirt.  Regardless of whether Defendant's DNA was
> on the shirt found in the Jaguar, it is undisputed that Defendant had been
> in the Jaguar.  *Id*. at 209 (lines 1-15), 288 (lines 18-25), 292 (lines 6-17).
> Thus, Defendant was linked to the alleged "get-away" vehicle.  Whether
> Defendant was linked to the shirt does not affect his guilt or innocence, as

> there was no claim made at trial that the shirt found in the Jaguar was the
> same shirt worn by the perpetrator at the time of the offense.  Defendant
> fails to show how counsel erred by failing to request that the shirt be
> tested for DNA or tried on by Defendant to determine if it fit him.
> Defendant also fails to show prejudice because there was no suggestion
> at trial that the shirt found in the Jaguar was linked to the charged
> offenses.  This claim is without merit.

(Resp. Ex. BB, at 107-08.)  On this record, Petitioner has failed to show that the state

court's decision reflects an unreasonable application of *Strickland*.  The State never

argued that the shirt found in the Jaguar was owned by Petitioner.  In the State's

closing argument, the prosecutor argued that the blue and white striped shirt was

immaterial to the identification of Petitioner by Mr. Watson, because Mr. Watson

actually knew Petitioner from the neighborhood.  (Resp. Ex. P, at 346-48.)  Accordingly,

it could not have been deficient performance for trial counsel to fail to have the shirt

size checked and the shirt DNA tested.  On this record, Petitioner has failed to show

that the state court's decision reflects an unreasonable application of *Strickland*.

### Claim 8: Failure to Obtain Exculpatory Evidence

Petitioner contends that trial counsel rendered ineffective assistance by failing to

present photographs of Fletcher's Bar, the nightclub where the robbery occurred, that

would have served to impeach the victims' testimony.  Petitioner alleges that his family

took photographs of the bar that would show that it was dark in the area where the

robbery occurred, casting doubt on Mr. Perkins' identification of Petitioner as the

perpetrator.

Petitioner raised this claim in his 3.850 motion, and the state postconviction court

denied the claim on the merits:

As to ground (viii), Defendant alleges that trial counsel was ineffective for failure to obtain and present exculpatory evidence. Prior to trial, Defendant's family took photographs outside of the bar where the charged offenses occur[ed]. Their purpose in taking the photographs was to impeach[] Robert Perkins' testimony that it was lit in the area of [the bar's] parking lot. Defendant contends that it was error for counsel not to admit his photographs into evidence; however, he does not allege how the photographs would have been admissible as evidence. Though Defendant took the stand at trial, he denied being in the parking lot that night. So, the photographs could not have come in through his testimony. Presumably, the photographs could not have been introduced through Robert Perkins' testimony, as Defendant sought to prove that the photographs depicted the *opposite* of his description of the location. . . . Furthermore, Defendant fails to show how he was prejudiced by the failure of counsel to introduce his photographs. At trial, Robert Perkins testified that he was able to get a good look at the perpetrator because the dome light in his truck came on when the perpetrator opened the door. *See* Trial Transcript at 65 (lines 4-15). Thus, even if it were dark *outside* the truck, it was not dark *inside* the truck.

(Resp. Ex. BB, at 108.)

Even if Petitioner's counsel had successfully introduced the photographs into evidence – which, as the state court noted, would have been difficult – Petitioner cannot show that the result of his trial would have been different with this evidence. As noted above in the discussion of Claim 5, whether it was dark or not in the parking lot of the bar makes no difference to Mr. Perkins' identification of Petitioner. Mr. Perkins testified that he saw Petitioner when Petitioner climbed into his truck's passenger seat, at which point the light inside the truck came on. (Resp. Ex. O, at 65.) Petitioner cannot show prejudice as a result of his counsel's purported failure to admit photographs of the parking lot. On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*.

***Claim 9: Failure to Object to Hearsay Statements of Det. Senn***

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to Det. Senn's "hearsay" testimony. While Petitioner refers to Det. Senn's deposition testimony in his petition, the state postconviction court and this court will construe his claim as alleging that his counsel was ineffective for failing to object to Det. Senn's *trial* testimony. At trial, Det. Senn testified that he interviewed Petitioner at the police station about the events in question. Det. Senn testified that Petitioner stated that he was at the nightclub on "Thursday night," which was the night that the robbery occurred. (Resp. Ex. P, at 244.) Det. Senn also testified that Petitioner "[v]ehemently denied being in the blue Jaguar." *Id.*

The state postconviction court denied this claim on the merits:

> Defendant claims that this testimony is inadmissible hearsay. These statements attributed to Defendant are admissions, which are an exception to the hearsay rule. *See* § 90.803(18) Fla. Stat. (2005). Accordingly, counsel did not err by failing to move to suppress or object to Detective Senn's statement regarding Defendant's admissions. These claims are without merit.

(Resp. Ex. BB, at 109.) As the state court properly found, Det. Senn's testimony was not inadmissible hearsay. Petitioner's counsel cannot be found ineffective for failing to make an objection that would have been meritless. On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*.

***Claim 10: Failure to Move to Suppress Fingerprint Evidence***

Petitioner contends that trial counsel rendered ineffective assistance by failing to move to suppress evidence that his fingerprints were found inside the blue Jaguar. As

previously noted, the State tied Petitioner to the crime by introducing evidence that the perpetrator had driven away in a blue Jaguar with dealer tags, and a blue Jaguar with dealer tags was found at the home of Petitioner's girlfriend. Petitioner asserts that he never denied that he had been in the Jaguar, and that the "fingerprint evidence was irrelevant and was only being used because of the hearsay statements made by Detective Senn," and "to show bad character and propensity." (Doc. 19, at 21.)

> The state postconviction court denied this claim on the merits:

> Defendant claims that the fingerprint evidence in this case was irrelevant. What Defendant claims to be irrelevant is the evidence of his fingerprints in the Jaguar, which was the alleged "get away" car. Evidence linking Defendant to the charged offenses is not irrelevant. Thus, had counsel moved to suppress this evidence on that basis, the motion would have been denied. In addition, any objection to the fingerprint evidence as irrelevant would also have been denied. This claim is without merit.

(Resp. Ex. BB, at 109.) The fingerprint evidence was clearly relevant, despite Petitioner's assertions, because the blue Jaguar was a key element that tied Petitioner to the scene of the crime. Det. Senn's testimony was not "hearsay," as discussed previously. And the fingerprint evidence was clearly not used merely to show bad character and propensity, but rather to tie Petitioner to the scene of the crime. Petitioner's counsel cannot be found ineffective for failing to make an objection that would have been meritless. On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*.

### Claim 11: Failure to Challenge the Composition of the Jury Panel

Petitioner contends that trial counsel rendered ineffective assistance by failing to challenge the composition of the jury panel, which had no African-Americans. In his reply to the state's response to his habeas petition, Petitioner "concedes that there is no

validity to this claim after further research and the state trial court was correct." (Doc.

23, at 7.)

### Claim 12: Failure to Request Curative Instructions Following Voir Dire

Petitioner contends that trial counsel rendered ineffective assistance by failing to

request curative instructions "where the state was allowed to continue to pre-try its case

during voir dire." (Doc. 19, at 25.) Petitioner appears to assert that the prosecutor

implied that defense witnesses' testimony was not reliable, and asserts that his counsel

should have objected to this. Petitioner also asserts that his counsel should have

objected to the prosecutor's question to the jury regarding the problem of proving a

robbery when there were no witnesses. In his reply to the state's response to his

habeas petition, Petitioner "concedes that this ground is meritless and that the state trial

court properly summarily denied it." (Doc. 23, at 8.)

### Claim 13: Failure to Move for a New Trial Based on New Evidence

Petitioner contends that trial counsel rendered ineffective assistance by failing to

file a motion for a new trial. Petitioner appears to assert that Det. Senn's testimony at

trial – that he received a "synopsis" of what had occurred during the robbery prior to

putting together the photo lineup – constituted new evidence that would call into

question the outcome of the motion to suppress the photo lineup identification.

Petitioner asserts that his counsel should have moved for a new trial based on Det.

Senn's testimony.

The state postconviction court denied this claim on the merits:

> Defendant claims that trial counsel should have moved for a new trial
> based on Detective Senn's testimony that he received a brief synopsis of

> what had occurred during the charged offenses before preparing the photo line-up. *See* Trial Transcript at 247 (lines 8-12). Defendant argues that this testimony proves that Detective Senn knew that the perpetrator was wearing a blue-and-white striped shirt when he put Defendant's photo (with him in a blue-and-white striped shirt) in the line-up. The record refutes Defendant's claim. When defense counsel directly asked Detective Senn whether he was aware of this fact prior to preparing the line-up, Detective Senn testified that he [was] not. *See* Trial Transcript at 247 (lines 13-25) - 248 (lines 1-12). Thus, there was no new evidence suggesting that Detective Senn had the indicated prior knowledge. Because there is no such evidence, counsel did not err by failing to move for a new trial based on it. This claim is without merit.

(Resp. Ex. BB, at 111.)

The state court's resolution of this claim was reasonable. There was no "new evidence" that would have justified a motion for a new trial, or that would have called into question the results of the motion to suppress. At the motion to suppress the photo lineup identification, there was no testimony or evidence presented that Det. Senn was aware that the perpetrator was wearing a blue and white striped shirt. Det. Senn testified at trial that he was not aware of this fact when he prepared the photo lineup. (Resp. Ex. O, at 247-48.) Petitioner's assertion to the contrary, that there was some evidence that Det. Senn was actually aware of the report regarding the shirt, is purely speculative and conclusory and is unsupported by the record. On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*.

### Claim 14: Failure to Object to Vouching for Credibility of Witnesses

Petitioner contends that trial counsel rendered ineffective assistance by failing to object and move for a mistrial during closing arguments, when he asserts that the prosecutor was inappropriately vouching for the credibility of Det. Senn. During closing

argument, the prosecutor told the jury:

> Use your common sense. If Detective Senn were going to lie to you, if he were going to risk his career, his reputation, and tell you a fib about what [Petitioner] said, wouldn't you think it would be a whole lot better than those three points? [That Defendant denied knowing anything about the Jaguar, denied being in the Jaguar, and said that he was in Tallahassee on the night of the robbery.] Wouldn't you think Detective Senn, if he was going to lie, would sit here and say "Oh, yeah, he told me he did it. Told me he robbed the guy, and this is why he robbed him. Told him – told me he didn't care –" Wouldn't that make more sense if you're going to tell a lie? That's not what Detective Senn did.
>
> He told you those three things; three things that you know now can be proven to – some of them to be untrue.

(Resp. Ex. P, at 325.)

The state postconviction court denied this claim on the merits:

> Defendant claims that the State vouched for the credibility of Detective Senn during closing argument. *See* Trial Transcript at 325 (lines 7-16). "Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony. *Hutchinson v. State*, 882 So. 2d 943, 953 (Fla. 2004). With law enforcement witnesses, it can occur where the State argues that the officer has too much to lose by lying; nothing to gain by lying; or, should be given more credibility because he or she is a law enforcement officer. *Robinson v. State*, 637 So. 2d 998, 998 (Fla. 1st DCA 1994); *see also Davis v. State*, 663 So. 2d 1379, 1380-81 (Fla. 4th DCA 1995). Here, none of the indicated argument was improper bolstering of Detective Senn's testimony. The State merely argued that if Detective Senn was lying, why would he not just say that Defendant confessed, rather than testifying that Defendant made contradictory statements. Counsel did not err by failing to object to this argument. This claim is without merit.

(Resp. Ex. BB, at 112.)

Prosecutors are permitted to argue the credibility of witnesses, but are prohibited from doing so based on evidence not before the jury or on the reputation of the government office. *See United States v. Hernandez*, 921 F. 2d 1569, 1573 (11th Cir. 1991). "Improper vouching occurs if the prosecutor makes explicit personal assurances

of a witness's veracity, or indicates that information not presented to the jury supports a witness's testimony . . . Improper vouching requires a determination that the jury reasonably believed 'the prosecutor was indicating a personal belief in the witness' credibility,' but does not prohibit arguments about credibility." *Hong v. Secretary Dept. Of Corrections,* 478 Fed. Appx. 648, 650-51 (11th Cir. 2012) (quoting *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009)). When the prosecutor voices a personal opinion but indicates that this belief is based on evidence in the record, the comment is not improper. *United States v. Granville,* 716 F.2d 819, 822 (11th Cir.1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two Government witnesses, only pointed to matters in evidence).

Here, the state court's decision rejecting Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of federal law. The state court determined that the comments at issue were appropriate commentary on the credibility of Det. Senn's testimony, not improper vouching. The prosecutor never implied that there was other evidence supporting Det. Senn's credibility that was not before the jury. Accordingly, counsel could not have been ineffective for failing to make an objection, as such an objection would have been meritless. However, even if one or more of the comments were deemed improper, it cannot be said that they denied Petitioner fundamental fairness. There is not a reasonable probability that the outcome of the trial would have been different had these statements not been made during closing, given the strength of the identification of Petitioner by both victims and the association of Petitioner with the getaway vehicle. On this record, Petitioner has failed

to show that the state court's decision reflects an unreasonable application of

*Strickland*.

### Claim 15: Failure to Object to Introduction of Testimony from Another Trial

Petitioner contends that trial counsel rendered ineffective assistance by failing to

object to the introduction of Robert Perkins' testimony from the prior trial regarding

whether the perpetrator of the robbery had gold teeth.  As the state postconviction court

explained,

> As to ground (xix), Defendant alleges that trial counsel was
> ineffective for failure to object to the State publishing the victim's
> testimony from Defendant's first trial.  During the second trial, Robert
> Perkins testified on direct examination that his perpetrator had gold teeth.
> *See* Trial Transcript at 73 (lines 16-18).  On cross-examination, defense
> counsel impeached Perkins' memory of the gold teeth with a deposition
> from October 26, 2004.  *Id.* at 85 (line 25) - 86 (lines 1-23).  In the
> deposition, Perkins did not recall whether the perpetrator had gold teeth.
> On re-direct, the State used Defendant's testimony from the first trial (on
> August 23, 2002) to rehabilitate him on the testimony about the gold teeth.
> *Id.* at 96 (lines 1-25) - 97 (lines 1-5).  Defendant contends that this is error
> because in Perkins' initial written statement to police he did not mention
> gold teeth.  *Id.* at 87 (lines 6-25) - 90 (lines 1-16).

The postconviction court denied this claim on the merits:

> At trial, the jury heard testimony that Perkins' initial statement did not
> mention gold teeth.  *Id.*  Thus, Defendant fails to show either error or
> prejudice.  First, the State was entitled to use a prior consistent statement
> once the witness was impeached.  *See Van Gallon v. State*, 50 So. 2d
> 882, 882 (Fla. 1951) ("once the witness's story is undertaken, by
> imputation, insinuation, or direct evidence, to be assailed as a recent
> fabrication, the admission of an earlier consistent statement rebuts the
> suggestion of improper motive and the challenge of his integrity.")
> Second, counsel was able to show through cross-examination that
> Perkins' earliest statement did not contain a reference to gold teeth on the
> perpetrator.  This claim is without merit.

(Resp. Ex. BB, at 112-13.)  Trial counsel's performance was not deficient, because any

Page 33 of 41

objection to the introduction of Mr. Perkins testimony from the first trial – used as a prior

consistent statement to rehabilitate the witness – was admissible under the rules of

evidence applicable to Florida state court proceedings. Nor has Petitioner demonstrated

that he was prejudiced by counsel's purported error, because Petitioner's trial counsel

effectively impeached Mr. Perkins by pointing out his prior inconsistent statements

regarding whether the perpetrator had gold teeth.  On this record, Petitioner has failed

to show that the state court's decision reflects an unreasonable application of

*Strickland*.

### Claim 16: Failure to File Notice of Expiration of Speedy Trial Time

Petitioner contends that trial counsel rendered ineffective assistance by failing to

file a notice that the speedy trial time had expired in his case.  Petitioner asserts that he

told his counsel that he wanted a notice of expiration of speedy trial to be filed, so that

his trial would occur within 90 days.  Petitioner asserts that counsel's failure to file the

notice gave the state additional time to prepare its case, "which resulted in finding their

two key witnesses and allowing them to change their statements to corroborate the

incident."  (Doc. 19, at 34.)

The state postconviction court denied this claim on the merits:

On June 23, 2004, the First District Court of Appeal issued its mandate
ordering a new trial in the above-captioned case.  Under Fla. R. Crim. P.
3.191(m), a retrial must occur within ninety (90) days of the trial court's
receipt of the mandate.  Ninety (90) days from the receipt of the mandate
would have been September 23, 2004.  Defendant was not brought to trial
within that time period. Defendant claims that the delay allowed the State
additional time to prepare its case and find its witnesses.  He argues that
had counsel filed the notice, the State would not have been prepared for
trial and, thus, dismissed his charges.

Defendant admits that he waived "speedy trial" in open court on

November 8, 2004. However, Defendant claims that he would not have had to do[] this had counsel filed the notice of expiration of speedy trial time. Besides the fact that Defendant personally waived his right to a speedy trial on November 8, the record reflects that counsel was still deposing witnesses beyond the speedy trial period. *See* Notice of Taking Depositions. In fact, Defendant's allegation supports the fact that counsel was not prepared to proceed to trial within the speedy trial period. As indicated in Defendant's motion, counsel asked the court for a sixty (60) day continuance on September 10, 2004. "[W]hen a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his speedy trial right as to all charges which emanate from the same criminal episode." *Stewart v. State*, 491 So. 2d 271, 272 (Fla. 1986). Thus, counsel's request for a continuance was essentially a waiver of the speedy trial right. Furthermore, because counsel was not ready for trial, it would have been inappropriate for counsel to have filed a notice of expiration of speedy trial time. *See* Fla. R. Crim. P. 3191(j), (p). Counsel did not err by failing to demand a speedy trial for which counsel was not prepared. This claim is without merit.

(Resp. Ex. BB, at 113-14.)

Insofar as this claim may be read to include a due process claim for violation of Florida's speedy-trial rule, Respondent contends that this claim is unexhausted for purposes of federal habeas corpus review because Petitioner did not raise the claim as a  federal constitutional due-process issue in the state court.

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to

"pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

As Respondent contends, Petitioner did not raise this speedy-trial claim as a federal constitutional issue in state court, and the federal claim would now be procedurally barred in state court. *Cf. Pearson v. Sec. Dept. Corr.*, 273 Fed.Appx. 847 (11th Cir. 2008) (rejecting sufficiency-of-the-evidence claim as unexhausted where Petitioner's state-court filings cited exclusively to state cases, and all of his substantive arguments addressed Florida law). Petitioner has shown neither cause nor prejudice to overcome such procedural default. *See id*.

Petitioner did raise this claim as an ineffective-assistance claim to the state postconviction court, and that claim is not unexhausted. However, Petitioner has failed to show that the state court's decision was incorrect or an unreasonable application of *Strickland*. As the state court observed, Petitioner's trial counsel was not prepared to go to trial within the speedy trial period, because he was still deposing witnesses.

Indeed, counsel was only able to identify and depose alibi witness Talika Rowe on the day before the trial. (Resp. Ex. O, at 21.) Because counsel was preparing for trial and seeking alibi witnesses, it was reasonable for him to continue trial preparation rather than file a notice of expiration of speedy trial and risk going to trial unprepared and without necessary witnesses. On this record, Petitioner has failed to show that the state court's decision reflects an unreasonable application of *Strickland*.

### Claim 17: Trial Court Erred by Denying Motion to Suppress the Photo Identification

Petitioner alleges that the trial court erred by denying his counsel's motion to suppress the photo lineup identification, in which Robert Perkins and Brian Watson identified him as the perpetrator of the robbery. As previously discussed, counsel moved to suppress the lineup on the grounds that it was unduly suggestive, because Mr. Perkins identified the perpetrator as wearing a blue and white striped shirt, and Petitioner's was the only photograph of an individual in such a shirt. The trial court denied that motion. Petitioner raised this issue on direct appeal, but the First DCA *per curiam* affirmed on all issues. (Resp. Ex. R, U.)

The Eleventh Circuit has set forth the standard for assessing identifications such as the one at issue here:

> This court consistently has followed a two-step analysis in assessing the constitutionality of a trial court's decision to admit out-of-court identifications. First, we must determine whether the original identification procedure was unduly suggestive. *Dobbs v. Kemp,* 790 F.2d 1499, 1506 (11th Cir.1986), *modified in part on other grounds,* 809 F.2d 750 (11th Cir.), *cert. denied,* --- U.S. ----, 107 S.Ct. 2203 (1987). If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was

nonetheless reliable. *See Neil v. Biggers,* 409 U.S. 188, 199 (1972);
*Dobbs,* 790 F.2d at 1506. This second stage involves consideration of five
factors identified by the Supreme Court in *Neil v. Biggers:* opportunity to
view, degree of attention, accuracy of the description, level of certainty,
and length of time between the crime and the identification. 409 U.S. at
199.

*Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988).  Here, the trial court stated only

that "applying the two-pronged test, the Court finds that the identification through the

line-up should not be suppressed and the motion is denied."  (Resp. Ex. O, at 16.)

Accordingly, it is unclear whether the trial court found that the original identification

procedure was not unduly suggestive, or whether it determined that the identification

was reliable under the totality of the circumstances.

It is undisputed that Mr. Perkins told the police that the person who had robbed

him was wearing a blue and white striped shirt.  Det. Senn testified at trial that he was

not aware of this detail when he prepared the photo lineup that included a photograph

of Defendant in a blue and white striped shirt.  (Resp. Ex. P, at 247.)  Det. Senn

testified he pulled Petitioner's photo because he heard the name "Roy," and that the

striped-shirt photo was "the first photo that I came across."  *Id*. at 248.  Mr. Perkins

testified that he was "sure" that the shirt had played some role in his choosing

Petitioner's photo from the lineup.  (Resp. Ex. O, at 94.)  Under these circumstances, it

appears that the original identification procedure may have been unduly suggestive,

despite Det. Senn's testimony that he was unaware of the blue-shirt detail at the time

the lineup was prepared.

Petitioner's claim fails on the second prong of *Strickland*, however, because

under the totality of the circumstances, the identification was still reliable.  Considering

the five *Neil* factors, both victims had an opportunity to view the perpetrator.  Mr.

Perkins viewed the individual under the light of his truck, and testified that he got a good

look at him as the individual held a gun to him and demanded money.  Mr. Watson

testified that he saw the individual when he interrupted the robbery in progress in the

parking lot, when he recognized the perpetrator as "Roy," whom he knew from his

neighborhood.  Mr. Perkins testified that he was paying attention to the perpetrator's

features, and provided a fairly accurate description of Petitioner's height and weight.

While his police description did not include Petitioner's gold teeth, his first and second

trial testimony did.  Both Mr. Perkins and Mr. Watson testified that they were certain

that Petitioner was the perpetrator, and that they were certain at the time that they

made the photo identification.  Det. Senn also testified that the victims quickly, and with

certainty, identified Petitioner.  In particular, Mr. Watson knew Petitioner from before the

robbery.  Finally, with respect to the length of time between the crime and the

identification, the victims identified Petitioner in the photo lineup within a couple of

hours of the crime occurring, a very short time frame.

Under these circumstances, the victims' identification of Petitioner in the photo

lineup was reliable, and the state trial court did not err in admitting the evidence.

Petitioner is not entitled to relief on this claim.

### Claim 18: Trial Court Erred by Permitting Michelle Johnson to Testify about a Gun

Petitioner alleges that the trial court erred by permitting Michelle Johnson,

Petitioner's ex-girlfriend, to testify about Petitioner's gun.  Petitioner alleges that

because victim Robert Perkins testified that the perpetrator was carrying a large, shiny

gun, and Ms. Johnson testified that Petitioner had carried a small, rusty gun, Ms. Johnson's testimony was irrelevant.

Respondent contends that this claim is unexhausted and procedurally defaulted because Petitioner did not present the issue as a federal claim in the state proceedings. (Doc. 20, at 25.)  Petitioner did raise this claim on direct appeal, but only in terms of Florida evidentiary law.  Petitioner's appeal brief cited only to Florida cases, and there is no evidence that Petitioner intended to raise federal constitutional claims as to this issue.  (Resp. Ex. R, T.)  Petitioner has not asserted any cause or prejudice for the default, nor does the record suggest that a fundamental miscarriage of justice would result if the claim is not considered.

Even if Petitioner had properly exhausted this claim as a federal claim in state court, however, he has not shown that he is entitled to federal habeas relief.[4]  A state trial court's evidentiary rulings do not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial.  *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).  Even if erroneous, a Petitioner must show that the ruling "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Here, Petitioner is unable to show that the trial court judge's rulings affected the fundamental fairness of his trial.  The State's case relied primarily upon the two victims' identification of Petitioner and Petitioner's association with the getaway vehicle.  Ms. Johnson's testimony was a very minor part of the case, and Petitioner has not shown

---

[4]Because it is clear that Petitioner is not entitled to relief on the merits, the Court may deny relief notwithstanding any failure to exhaust.  *See* 28 U.S.C § 2254(b)(2).

that the outcome of the trial would have been different if Ms. Johnson had not testified.

Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the Second Amended Petition for writ of habeas corpus (Doc. 19) should be **DENIED**.

*Case No: 1:10-cv-94-MP-GRJ*

2. That a certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 18th day of July 2013.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.